*Lance Cutchember v. State of Maryland*, No. 39, September Term, 2025; *Phillip Antoine Hicks v. State of Maryland*, No. 40, September Term, 2025; Opinion by Killough, J.

**CRIMINAL LAW - CRIMINAL PROCEDURE ARTICLE ("CP") § 1-211 - RETROACTIVITY**

The Supreme Court of Maryland held that CP § 1-211(c) provides a remedy for a violation of CP § 1-211(a)-(b), and, given the General Assembly's intent as evidenced by the plain language of the statute, no part of CP § 1-211 could have been violated before its effective date of July 1, 2023. Consequently, the exclusionary remedy in § 1-211(c) does not apply to cannabis-related stops or searches conducted before the statute's effective date.

**CRIMINAL LAW - CP § 1-211 – LAWFULNESS OF STOPS AND/OR SEIZURES BASED ON THE ODOR OF CANNABIS ALONE**

The Supreme Court of Maryland held that law enforcement did not violate CP § 1-211(a) by searching Petitioner Cutchember's vehicle or stopping Petitioner Hicks based solely on the odor of cannabis. Because both events occurred before the statute's effective date, no statutory violation could have occurred.

Circuit Court for St. Mary's County
Case No.: C-18-CR-23-000138
Circuit Court for Worcester County
Case No.: C-23-CR-23-000051
Argued: January 8, 2026

IN THE SUPREME COURT
OF MARYLAND

Nos. 39 & 40

September Term, 2025

LANCE CUTCHEMBER

v.

STATE OF MARYLAND

PHILLIP ANTOINE HICKS

v.

STATE OF MARYLAND

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

Opinion by Killough, J.

Filed: March 3, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

These consolidated appeals ask whether a significant change in Maryland's search-and-seizure law applies retroactively. Effective July 1, 2023, the General Assembly mandated that a law enforcement officer may not initiate a stop or search of a person or vehicle based solely on the odor of cannabis. *See* Md. Code Ann., Criminal Procedure ("CP") § 1-211(a)(1). In separate instances, Petitioners Lance Cutchember and Phillip Hicks were stopped and searched based on that odor in January 2023—six months before the statute took effect. Their suppression motions were subsequently denied in hearings held after the statute's effective date. We must now decide whether the exclusionary remedy provided in CP § 1-211(c) applies to searches conducted before the law went into effect.

We granted certiorari to answer a consolidated question: Does CP § 1-211's exclusionary remedy apply only to evidence "discovered or obtained in violation of this section" and therefore apply only prospectively?[1] We answer this question in the

---

[1] While the Court granted certiorari on three questions, the question as framed above provides a consolidated summary of the issues presented. For completeness, the three questions, as granted, are:

*From Petitioner Hicks*: (1) Does § 1-211(c) of the Criminal Procedure Article apply retroactively? (2) When the General Assembly determined that the smell of cannabis alone would not constitute a basis for a stop or search, did it clearly demonstrate its intent that the enabling statute, Md. Code Ann., Criminal Procedure ("Crim. Proc.") § 1-211, apply prospectively and not retrospectively when it used the phrase, "Evidence discovered or obtained in violation of this section…is not admissible in a trial, a hearing, or any other proceeding in § 1-211(c)?"

affirmative. Guided by well-settled canons of statutory interpretation, we begin with the plain language of the statute to ascertain the General Assembly's intent. The plain language of CP § 1-211(c) creates a textual prerequisite: the remedy provided for in subsection (c) requires an underlying "violation" of the statute's substantive standards set forth in subsections (a) or (b). Because those standards were not in effect at the time of the police encounters here, no violation occurred. In reaching this conclusion, we reject Petitioners' contention that the "procedural" or "remedial" nature of CP § 1-211 overrides the plain text of the statute. Accordingly, CP § 1-211(c) does not require the suppression of evidence obtained before July 1, 2023, based solely on the odor of cannabis, regardless of when the suppression hearing is held.

## I.

### Background

*A. Criminal Procedure § 1-211*

The General Assembly enacted CP § 1-211 on May 28, 2023, during the 2023 Regular Session and it became effective July 1, 2023. H.B. 1071, 2023 Reg. Sess. (Md. 2023). The statute was part of House Bill 1071, which passed in the House on April 4,

---

*From Petitioner Cutchember*: (3) If the General Assembly's intent regarding prospective or retrospective application of Crim. Proc. § 1-211 is ambiguous, should the statute be applied in cases where the stop or search occurred before the effective date of the statute, but the suppression hearing occurred after the effective date, because the statute is procedural and not substantive, because the statute is remedial, and/or because *Waker v. State*, 431 Md. 1 (2013) requires retrospective application?

2

2023, and passed in the Senate on March 29, 2023.[2]  *Id.*  Criminal Procedure § 1-211 provides:

>   (a) A law enforcement officer may not initiate a stop or a search of a person, a motor vehicle, or a vessel based solely on one or more of the following:
>
>      (1) the odor of burnt or unburnt cannabis;
>
>      (2) the possession or suspicion of possession of cannabis that does not exceed the personal use amount, as defined under § 5-601 of the Criminal Law Article; or
>
>      (3) the presence of cash or currency in proximity to cannabis without other indicia of an intent to distribute.
>
>   (b) If a law enforcement officer is investigating a person solely for driving or attempting to drive a motor vehicle or vessel while impaired by or under the influence of cannabis in violation of § 21-902 of the Transportation Article or § 8-738 of the Natural Resources Article, the law enforcement officer may not conduct a search of an area of a motor vehicle or vessel that is not:
>
>      (1) readily accessible to the driver or operator of the motor vehicle or vessel; or
>
>      (2) reasonably likely to contain evidence relevant to the condition of the driver or operator of the motor vehicle or vessel.
>
>   (c) Evidence discovered or obtained in violation of this section, including evidence discovered or obtained with consent, is not admissible in a trial, a hearing, or any other proceeding.

CP § 1-211.

---

[2] These dates reflect the respective "Legislative Date."  The "Legislative Date" may be different from the "Calendar Date" because the legislative day is the "[l]ength of time from convening a session in the chamber until adjournment, which may be longer or shorter than a calendar day."  *Legislative Lingo*, Maryland General Assembly Department of Legislative Services (2024), https://perma.cc/YXS8-2NB2.

The statute was enacted as a result of Maryland voters approving a constitutional amendment in 2022 that permitted, as of July 1, 2023, the use and possession of cannabis by individuals aged twenty-one or older. 2022 Md. Laws ch. 45; *see* Md. Const., art. XX, § 1 (effective December 14, 2022). This amendment also required the General Assembly to "provide for the use, distribution, possession, regulation, and taxation of cannabis within the State." *Id.* § 1(b). With that duty the General Assembly legalized the possession of a "personal use amount" of cannabis, Md. Code Ann., Criminal Law ("CL") § 5-601, and decriminalized the possession of a "civil use" amount of cannabis, CL § 5-601.1. The possession of cannabis beyond the "civil use" amount remains a crime. CL § 5-601.

B. *The odor of cannabis, probable cause, and reasonable suspicion*

Criminal Procedure § 1-211(a) makes it unlawful for law enforcement to conduct an investigatory stop or search based solely on the odor of cannabis. This provision constituted a substantive change in Maryland law. Prior to CP § 1-211(a)'s enactment, the odor of cannabis, standing alone, gave rise to reasonable suspicion to support an investigatory stop, *see In re D.D.*, 479 Md. 206, 240–41 (2022), and probable cause to search, *see Robinson v. State*, 451 Md. 94, 137 (2017). By enacting CP § 1-211(a) on May 28, 2023, the General Assembly superseded the holdings of those cases. *See Phillips v. State*, 451 Md. 180, 196 (2017) ("This Court provides judicial deference to the policy decisions enacted into law by the General Assembly."). Consequently, as of July 1, 2023—the effective date of CP § 1-211—law enforcement may no longer rely on the odor of cannabis alone to justify a stop or search; any evidence obtained in violation of this statute is now inadmissible under CP § 1-211(c).

4

*C. Petitioners' Motions to Suppress*

Petitioner Lance Cutchember was arrested on January 6, 2023, and charged with possession of 3,4-methylenedioxymethamphetamine (a Schedule I Controlled Dangerous Substance commonly known as "MDMA")[3] and a digital scale containing residue of the same. On that date, a law enforcement officer conducted a traffic stop of Cutchember's vehicle and, upon detecting an odor of cannabis, performed a search that recovered the cannabis and MDMA.

Cutchember moved to suppress the evidence in the Circuit Court for St. Mary's County and a hearing was held on August 23, 2023. At the hearing, counsel argued that the evidence should be suppressed pursuant to the newly enacted CP § 1-211. The court denied the motion, ruling that the statute became effective July 1, 2023—after the January search—and did not apply retroactively. Consequently, the court found that at the time of the stop, the odor of cannabis alone provided the officer with the requisite probable cause to search the vehicle.

Petitioner Phillip Hicks was arrested on January 2, 2023, and charged with possession of cocaine and cannabis with intent to distribute and related offenses. On that day, a law enforcement officer stopped Hicks and conducted an investigatory automobile stop based solely on the odor of cannabis emanating from the vehicle. After Hicks was

---

[3] Cutchember eventually appealed the circuit court's decision denying his motion to suppress. In its opinion deciding that appeal, the Appellate Court incorrectly identified MDMA as "N, N-Dimethylpentylone." *Cutchember v. State*, 265 Md. App. 690, 691 (2025). MDMA is chemically and pharmacologically known as "3,4-methylenedioxymethamphetamine." *3,4-methylenedioxymethamphetamine*, National Library of Medicine (2026), https://perma.cc/U22L-B47H.

5

stopped and admitted to recently "smoking weed or marijuana in the vehicle," law enforcement conducted a search of the vehicle. During that search, law enforcement found "various amounts of marijuana packaged in ounce quantities, . . . approximately a half ounce of cocaine, psilocybin mushrooms, and packaging indicative of possession with intent for those controlled dangerous substances." On April 17, 2023, Hicks filed a motion to suppress in the Circuit Court for Worcester County to exclude the items recovered from his vehicle. A hearing on his motion to suppress was held on July 6, 2023. At the hearing, Hicks' counsel argued that when law enforcement stopped Hicks, CP § 1-211 was already set to be effective on July 1, 2023. Therefore, the odor of marijuana alone could not give rise to probable cause or reasonable suspicion. Nevertheless, the court denied his motion to suppress on the grounds that CP § 1-211 was not in effect at the time of the stop.

Both Petitioners were convicted of their respective alleged offenses. After their convictions, they appealed the circuit court's denial of their respective motions to suppress to the Appellate Court of Maryland.

### D. Appellate Court of Maryland

In both cases, the Appellate Court of Maryland affirmed the circuit courts' decisions denying Petitioners' respective motions to suppress. The Appellate Court published a reported opinion in *Cutchember v. State*, 265 Md. App. 690 (2025), and used that as the

6

primary vehicle for its analysis in Hicks' appeal, which it issued as an unreported opinion.[4]

Thus, we look to *Cutchember* as the foundation for the lower court's holdings.

1. Cutchember's Appeal

In its analysis, the Appellate Court relied heavily on its prior decision in *Kelly v. State*, which addressed whether CP § 1-211 applied retroactively to cases pending on appeal where the search and conviction occurred prior to the statute's effective date. *Kelly v. State*, 262 Md. App. 295, 298–300 (2024). In *Kelly*, law enforcement conducted a traffic stop involving the defendant and subsequently searched his vehicle based on the odor of cannabis alone. *Id.* at 299–300. During the defendant's appeal process, CP § 1-211 became effective, thereby prompting the defendant to argue in the Appellate Court that the new statute applied to his case despite the search, suppression hearing, conviction, and sentencing having occurred prior to the statute's effective date. *Id.* The court held that CP § 1-211 did not apply. *Id.* at 300. It explained:

> [B]ecause the exclusionary remedy provided by CP § 1-211 was made contingent upon a violation of the right created by the statute, the General Assembly sent a clear message that the statute was not merely procedural or remedial, but rather was a substantive change to existing rights, as well as the duties and obligations of law enforcement officers.

*Id.* at 309. The Appellate Court reasoned that a plain reading of the statute did not support retroactive application. *Id.* at 311.

---

[4] Unreported opinions cannot "be cited as precedent within the rule of stare decisis" but may be cited as persuasive authority under certain circumstances listed in Maryland Rule 1-104. Md. Rule 1-104(a). This stands in contrast to reported opinions which are "of substantial interest as precedents," Md. Rule 8-605.1, and are published for their precedent setting authority, *see Wadsworth v. Sharma*, 479 Md. 606, 630 (2022) (explaining that, under the principles of stare decisis, published opinions are precedential).

7

Cutchember argued that the difference in "procedural posture"—specifically that his suppression hearing occurred after the effective date of July 1, 2023—distinguished his case from *Kelly*. *Cutchember*, 265 Md. App. at 699. According to Cutchember, the circuit court erred because (1) the court had a duty to apply the law at the time of his suppression hearing, which occurred after the law's effective date, and (2) "the language of CP § 1-211(c) does not reflect an intent by the [L]egislature for the statute to apply only to cases where the search occurred after the effective date of July 1, 2023." *Id.* at 701–03.

The Appellate Court disagreed, explaining that the outcome was dictated by the "right/remedy" framework borrowed from the Court of Appeals of Virginia in *Street v. Commonwealth*, 75 Va. App. 298 (2022). In *Street*, the police conducted a traffic stop involving the defendant and, during that stop, law enforcement smelled the odor of cannabis resulting in a search of the defendant's vehicle based on that odor. *Id.* at 303. The search produced a revolver, and the defendant was indicted for "possession of a firearm after conviction of a nonviolent felony." *Id.* One and one-half years after the incident, a new statute took effect that rendered a search of a vehicle due solely to the odor of marijuana unlawful.[5] *Id.* The passing of the statute, Va. Code § 4.1-1302(A), prompted

---

[5] The Virginia Legislature enacted Virginia Code § 4.1-1302, titled "Search without warrant; odor of marijuana," in 2021 ("Va. Code § 4.1-1302"). That statute provided, in pertinent part, that:

A. No law-enforcement officer [] may lawfully stop, search, or seize any person, place, or thing and no search warrant may be issued solely on the basis of the odor of marijuana and no evidence discovered or obtained pursuant to a violation of this subsection, including evidence discovered or

8

the defendant to file a motion to suppress arguing that the new statute should be applied retroactively to exclude the firearm from evidence at his trial. *Street*, 75 Va. App. at 303. His motion was denied. *Id.* On appeal, the Court of Appeals of Virginia affirmed explaining that Va. Code § 4.1-1302(A) provided a "right" prong, which "[gave] individuals a new right to be free from searches that are based solely on the odor of marijuana[,]" and a "remedy" prong, which "[granted] the remedy of exclusion of evidence for a violation of that specific new right." *Street*, 75 Va. App. at 307. "[B]ecause the statutory prohibition on searches based solely on the odor of marijuana could not be violated before [Va.] Code § 4.1-1302(A) [] took effect, the [Virginia Legislature] provided clear instruction that the accompanying exclusionary provision applies only prospectively." *Street*, 75 Va. App. at 310. The Virginia court reasoned that the "plain reading of the statute supports application of the general rule that it does not apply retroactively." *Id*. at 307–08.

Adopting the *Street* analysis, the Appellate Court characterized CP § 1-211 as consisting of a "right" prong—the substantive right to be free from odor-based searches under subsections (a) and (b)—and a "remedy" prong—the exclusion of evidence for a violation of that specific right under subsection (c). *Cutchember*, 265 Md. App. at 700–01; *see Street*, 75 Va. App. at 307 (construing Va. Code Ann. § 4.1-1302(A)). The court reasoned that because the "right" did not exist at the time of the January 2023 search, the

---

obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding.

9

search "could not violate a nonexistent statute," rendering the subsection (c) remedy inapplicable. *Cutchember*, 265 Md. App. at 700–01 (quoting *Street*, 75 Va. App. at 307) (cleaned up). Consequently, the Appellate Court held that "the date of the search is the key event in determining whether the right created by the statute in fact existed[.]" *Id.* at 701; *see Street*, 75 Va. App. at 307 ("Simply put, the 2019 search could not violate a nonexistent statute, and the 2021 'remedy' provision contained . . . [in the statute] does not apply to that search.").

The Appellate Court also addressed Cutchember's reliance on *Waker v. State*, 431 Md. 1 (2013), which he cited for the broad proposition that a court must apply the law in effect at the time of a hearing. *Cutchember*, 265 Md. App. at 701. As the court noted, *Waker* involved a sentencing statute—a purely procedural rule governing the court's authority at the moment of judgment. *Id.* at 701–02. In contrast, CP § 1-211 represents a substantive change in the law governing searches, rather than a procedural rule limited to adjudicatory processes, as in *Waker*. *Id.*

The court explained that in *Waker*, the defendant was charged under a "new theft statute" that had gone into effect "after Mr. Waker was arrested and charged but before his conviction and sentence[.]" *Id.* at 701. The new statute had "lowered the maximum period of incarceration for Mr. Waker's crime" and therefore was only applicable to his possible sentence to be decided at his sentencing hearing. *Id.* The *Waker* court was "concerned with the propriety of a sentence that was rendered in violation of a statute that went into effect before the defendant was actually tried and sentenced." *Id.* (internal quotations omitted). At the time Waker was sentenced, the new statute applied; therefore, it was

10

legally erroneous for the sentencing judge to exceed the maximum sentence provided for in the new statute. *See id.* But in Cutchember's case, the event at issue "was legal when it was conducted," therefore, the circuit court did not err. *Id.* at 702.

The Appellate Court likewise found Cutchember's reliance on *Thompson v. State*, 411 Md. 664 (2009), misplaced. *Cutchember*, 265 Md. App. at 703. Cutchember cited *Thompson* for the proposition that the language of CP § 1-211(c) does not explicitly restrict the application of its remedy to searches occurring after the statute's effective date. *Id.* As the Appellate Court noted, however, "*Thompson* involved remedial revisions to a procedural statute." *Id.* Specifically, the statute provided "broader appeal rights and more liberal standards for the granting of new trials" to those convicted of a crime. *Thompson*, 411 Md. at 678. By contrast, CP § 1-211 created "a substantive (not procedural) change in the law affecting searches." *Cutchember*, 265 Md. App. at 703 (internal quotations omitted).

2. Hicks' Appeal

Hicks argued that the circuit court erroneously denied his motion to suppress because—as Cutchember also argued in his appeal—the circuit court had a duty to apply the law at the time of his motion to suppress hearing, which was held after the law's effective date. *Hicks v. State*, 2025 WL 2355130, at *2 (Md. App. Ct. Aug. 14, 2025). The Appellate Court affirmed the circuit court's decision to deny Hicks' motion to suppress, referencing its analysis in *Cutchember*. *Id.* It explained again that:

> [T]he operative date for determining the applicability of CP § 1-211 is the date of the search . . . and because a search cannot violate a nonexistent

11

statutory right, the exclusionary remedy of CP § 1-211(c) cannot apply to a search that took place before the statute's effective date of July 1, 2023.

*Id.* (quoting *Cutchember*, 265 Md. App. at 706) (cleaned up).

Cutchember and Hicks each petitioned this Court and we granted certiorari.

## II.

## Standard of Review

This case presents a question of statutory interpretation. Accordingly, we review the Appellate Court's decision and the circuit courts' interpretation of CP § 1-211 *de novo*. *See Romeka v. RadAmerica II, LLC*, 485 Md. 307, 323 (2023) ("As this is a matter of statutory construction, we review the circuit court's decision without deference.").

## III.

## Discussion

When interpreting a statute, "[o]ur chief objective is to ascertain the General Assembly's purpose and intent when it enacted the statute." *Berry v. Queen*, 469 Md. 674, 687 (2020). Our analysis begins "with the well-established canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *Seal v. State*, 447 Md. 64, 70 (2016) (citing *Ray v. State*, 410 Md. 384, 404 (2009)). "If the language is clear and unambiguous on its face, that is the end of our inquiry." *Id.* (citing *Ray*, 410 Md. at 405).

When determining whether a statute operates retroactively, we look to the "legislative intent" of the statute. *State v. Smith*, 443 Md. 572, 588 (2015). In this endeavor, we begin with the heavy presumption that "[s]tatutes are presumed to operate

12

prospectively[.]" *Gregg v. State*, 409 Md. 698, 714 (2009). This presumption is only rebutted by "clear legislative intent to the contrary[.]" *Langston v. Riffe*, 359 Md. 396, 406 (2000) (quoting *Spielman v. State*, 298 Md. 602, 607 (1984)). Legislative intent is first and foremost ascertained through the language of the statute. *See Seal*, 447 Md. at 70–71. If the language is ambiguous, only then does this Court "examine case law, the structure of the statute, statutory purpose, and legislative history to aid us in ascertaining the intent of the General Assembly." *Id.*

In the absence of an express statement of intent, a statute may be applied to pending cases if it is purely "procedural" or "remedial" in nature. *Smith*, 443 Md. at 589. A procedural statute "simply prescribes the methods of enforcement" of existing rights, whereas a substantive statute "creates rights, duties and obligations[.]" *Id.* at 590. A remedial statute is one that provides a new remedy or improves an existing one for the "enforcement of rights and the redress of injuries." *Id.* at 592. However, these exceptions are narrow: a remedial or procedural change will not be applied retroactively "if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws." *Id.* at 589. Of course, if the statute's language indicates a purely prospective application and that purely prospective application is "clearly consistent with the statute's apparent purpose," then we must apply the statute as written. *SM Landover, LLC v. Sanders*, 489 Md. 614, 637 (2025) (citing *Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 478 Md. 61, 75–76 (2022)) (cleaned up). That would mean there is no longer just a *presumption* of prospective application but *confirmation* as to the statute's purely prospective application.

Before this Court, Cutchember argues that CP § 1-211 "required the lower court to refuse to admit the evidence discovered and seized as a result of the aforesaid vehicle search." He contends that "[b]ecause CP § 1-211(c) represents a procedural change in the law, it is retroactive and is effective for all cases then under litigation at its effective date, 1 July 2023, regardless of the state of the law as it existed at the time of the instant vehicle search." He also argues that the statute should be applied retroactively because it is remedial.

Hicks argues that the language of CP § 1-211 does not clearly support a prospective only application. He contends that since the statute concerns a procedural change and a remedy, it should be applied retroactively. He also argues that, as *Waker* explains, a court generally applies the law in effect when it considers a case and "not the law in effect when the alleged offense or event occurred," *Waker*, 431 Md. at 9–10, so CP § 1-211 should apply to his case as it was in effect at the time of his suppression hearing.

The State argues that CP § 1-211 applies prospectively only because, by its plain language, the statute applies solely to searches conducted on or after its July 1, 2023, effective date. Furthermore, the State contends that the statute created a new substantive right rather than a mere remedial procedure. Because both Petitioners' searches occurred before the effective date, the State argues that they are not entitled to the statutory remedy of suppression provided by CP § 1-211(c).

We agree with the State. The plain language of CP § 1-211 does not permit application to police searches that occurred before the law existed. As the Appellate Court explained in *Kelly* and reaffirmed below, the language of the statute is "clear" and

14

unambiguous. *Cutchember*, 265 Md. App. at 705 (quoting *Kelly*, 262 Md. App. at 308–09). Consequently, the "date of the search is the key event in determining whether the right created by the statute in fact existed and thus whether a violation of that right had occurred." *Cutchember*, 265 Md. App. at 701. Like the Appellate Court, we agree with the "right/remedy" framework applied by Virginia's intermediate appellate court in *Street v. Commonwealth*. In *Street*, the court analyzed a nearly identical cannabis search statute and determined it contained two distinct parts: a "right" prong—"No law-enforcement officer . . . may lawfully stop, search, or seize any person, place, or thing and no search warrant may be issued solely on the basis of the odor of marijuana," Va. Code Ann. § 4.1-1302(A); and a "remedy" prong—"no evidence discovered or obtained pursuant to a violation of this subsection, including evidence discovered or obtained with the person's consent, shall be admissible in any trial, hearing, or other proceeding," *id. See Street*, 75 Va. App. at 306–07.

Criminal Procedure § 1-211(a) similarly creates a substantive right that supersedes our holding in *Robinson*, which allowed searches based on the odor of cannabis alone. *See Robinson*, 451 Md. at 137. Because this right did not exist in January 2023—at the time the police searched Cutchember's and Hicks' vehicles based on the smell of marijuana alone—law enforcement did not "violate" the statute. Criminal Procedure § 1-211(c) makes clear that only "[e]vidence discovered or obtained in violation of this section" is inadmissible. Because a violation of subsection (a) was legally impossible before July 1, 2023, the exclusionary remedy in subsection (c) is unavailable to these Petitioners. Since the plain language of CP § 1-211 is unambiguous, it is unnecessary to engage in further

15

retroactivity analysis. We decline to adopt "forced or subtle interpretations" that would extend the statute beyond the clear intent evidenced in its text. *See, e.g.*, *Bd. of Cnty. Comm'rs of St. Mary's Cnty. v. Marcas, L.L.C.*, 415 Md. 676, 685 (2010) ("We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application.")

Hicks argues that CP § 1-211 is merely procedural as it gave "full effect" to existing rights against unreasonable searches and the right to possess a personal use amount of cannabis. We are unpersuaded. Prior to the statute's effective date, Marylanders did not have a specific right to be free from cannabis-odor searches, regardless of the amount possessed. Under *Robinson* and *In re D.D.*, we held that such searches were constitutionally reasonable. *See Kelly*, 262 Md. App. at 305 (explaining that "the Supreme Court of Maryland [has] consistently held that the odor of cannabis remained evidence of a crime and [has] permitted a warrantless search of a vehicle." (collecting cases)). Criminal Procedure § 1-211(a) thus gave Marylanders a new *substantive* right to be free of searches and seizures based on the odor of cannabis alone. *See Kelly*, 262 Md. App. at 308–09 ("It was not until CP § 1-211 became effective that the 'right' at issue, i.e., the prohibition against warrantless searches of automobiles based solely on the odor of cannabis, came to fruition.").

Petitioners ask us to look to *Waker* to decide that the circuit court should have applied CP § 1-211 to their respective cases. But, here, the circuit court *did* apply the law as it was at the time of each Petitioner's suppression hearing. Because the "event"

16

regulated by CP § 1-211 is the police encounter itself, the legality of that encounter is fixed at the moment it occurs. In *Waker*, the sentencing court was required to look at the law "today" to determine a penalty, but here, a suppression court looks at the law "yesterday" to determine if an officer's conduct was lawful when the search was conducted. The evidence in Petitioners' cases was not "discovered or obtained in violation of" CP § 1-211(a), because that section did not exist—much less was in effect—at the time the searches and seizures occurred. Thus, the circuit court did not err in declining to suppress the evidence, as the statutory prerequisite for exclusion—a violation of the section—could not be met.

Hicks also relies on an opinion from one of New York's intermediate appellate courts, *People v. Martin*, 238 N.Y.S.3d 332 (2024), *leave to appeal granted*, 44 N.Y.3d 985 (2025), for support. In *Martin*, the court addressed a question similar to the one before us: "whether [a statute] . . . applies to a post-enactment suppression hearing concerning a pre-enactment search." *Id.* at 334. There, the court held in the defendant's favor, suppressing evidence from a search that occurred before the statute's effective date because the hearing occurred after the law took effect. *Id.*

While the New York statute shares a similar purpose to CP § 1-211, it lacks the critical predicate language found in the Maryland provision. The New York statute provides, with some exceptions:

> [I]n any criminal proceeding . . . , no finding or determination of reasonable cause to believe a crime has been committed shall be based solely on evidence of the following facts and circumstances, either individually or in combination with each other:

17

(a) the odor of cannabis . . . .

N.Y. Penal Law § 222.05(3)(a) (2025).

Unlike Maryland's CP § 1-211(c), the New York statute does not require a "violation" of another subsection to trigger its protection. *See id.* Instead, the New York statute governs the "criminal proceeding" itself, commanding that "no finding or determination" of reasonable cause be made based on cannabis odor. *Id.* As the *Martin* court explained, the New York law "addresses the trial court's fact-finding authority in a pending criminal proceeding, not the conduct of the participants in the underlying event." *Martin*, 238 N.Y.S.3d at 336 (citation omitted).

In the "right/remedy" framework, the New York statute essentially collapses the two prongs into a single procedural mandate. It does not remedy an officer's past "violation" of a right; rather, it limits a judge's present authority to consider specific facts. The New York trigger is adjudicatory—it limits what a judge may consider during a hearing. Maryland's trigger, however, is conduct-based—it limits what an officer may do on the street. Because the Maryland remedy in CP § 1-211(c) is expressly predicated on a "violation" of the substantive right established in subsection (a), the legality of the officer's conduct must be judged by the law as it stood at the time of the stop. Because no violation occurred under the law then in effect, *Martin* is inapposite.[6]

---

[6] Petitioners' reliance on the *Martin* decision is further undercut by the fact that another New York intermediate appellate court has since expressly rejected its holding. In *People v. Fasoli*, 241 N.Y.S.3d 795 (2025), that court stated that it declined to adopt the *Martin* decision, holding that "the operative date for determining whether Penal Law § 222.05(3) applies is when the search was performed, not when the suppression hearing was

18

Petitioners lastly urge us to apply the remedial canon of construction, arguing that because CP § 1-211 was designed to cure a perceived injustice in the law, it should apply to all pending hearings. When passing CP § 1-211, the General Assembly published an accompanying Racial Equity Impact Note, which explained the injustice the new law was designed to cure.[7] In that Note, the Legislature acknowledged that "[s]tudies and collected data show that racial minorities are disproportionately subject to pretextual stops, such as stop and frisk, as compared to whites" and that "[t]he odor of cannabis has long been used as a tool for law enforcement to conduct these pretextual stops." DEP'T LEGIS. SERVS., RACIAL EQUITY IMPACT NOTE, H.B. 1071, 2023 Sess., at 3 (2023).[8]

---

held." *Id.* at 798. The *Fasoli* court reasoned that Penal Law § 222.05(3) restricts what evidence can demonstrate probable cause that a crime occurred when determining suppression issues, which undermines the fundamental rights of parties in criminal cases. *Id.* This occurs because such a restriction would retroactively change the legal standard that applied when the search took place, and "would significantly, and perhaps fatally, limit the admissible evidence available to the People at trial." *Id.* The *Fasoli* court also noted that New York courts have previously held that Penal Law § 222.05(3) should not be applied retroactively, finding no legislative intent to apply the statute retroactively in a manner that would invalidate a search that was lawfully supported by probable cause at the time it was conducted. *Id.* (citations omitted).

[7] The General Assembly's Racial Equity Impact Note unit writes Racial Equity Impact Notes for select criminal justice legislation. "Factors that determine whether a [Note] is published for a bill . . . include whether (1) there is sufficient data available to provide an objective analysis of the bill's provisions; (2) the topics addressed in the bill include current issues of concern for minority residents in the State; and (3) providing information surrounding key decision points in the criminal justice system will inform legislators and the public of possible policy impacts of legislation." *Racial Equity Impact Notes*, Maryland General Assembly Department of Legislative Services (2026), https://perma.cc/YUP6-AGXE.

[8] The Note is accessible electronically here: https://perma.cc/Z56H-WA5B.

In addition to providing relevant data to support this proposition, the Note uses language further indicating that the General Assembly understood CP § 1-211 to apply only as of its effective date. *See id.* at 1 (stating that "[e]vidence discovered or obtained in violation of this bill . . . is not admissible," and that to the extent the bill's provisions reduce these stops, Black or African American individuals will be significantly impacted). The Note consistently discusses the bill's impact in the future tense, noting it would "likely reduce" the volume of stops and "will substantially impact" minority residents by reducing exposure to warrantless activity. *Id.* at 6.

We recognize that statutes which are purely remedial or procedural may, in certain circumstances, be applied retroactively. *See, e.g.*, *Est. of Zimmerman v. Blatter*, 458 Md. 698, 728–29 (2018). But here, the plain language of the statute is clearly consistent with the statute's apparent purpose. In this case, the plain language canon and the remedial canon do not conflict. *See, e.g.*, *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (explaining that even when a statute's "language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation" and ensure the two are aligned). The General Assembly's chosen remedy in subsection (c) is explicitly conditioned on a "violation" of the substantive standards in subsections (a) and (b). Through this conditional relationship, the General Assembly signaled that the remedy exists only where law enforcement breaches a statutory duty not to conduct a search based on the smell of

cannabis alone.[9]  Because no such duty or right—and thus no "violation" thereof—could have existed prior to July 1, 2023, the remedial purpose of the statute is logically limited to its prospective application.  To hold otherwise would be to create a statutory violation where the General Assembly did not, exceeding our judicial role.  *See, e.g.*, *Guttman v. Wells Fargo Bank*, 421 Md. 227, 234 (2011) ("We are not free to disregard clear statutory instructions and rely instead upon contrary legislative history, even where we disagree with the Legislature as to the 'fairest' or 'best' disposition of the case." (cleaned up)).  Thus, the plain language dictates the meaning of the statute.  *See SM Landover, LLC*, 489 Md. at 637.

**IV.**

**Conclusion**

The General Assembly's enactment of CP § 1-211 represents a significant shift in Maryland law aimed at curtailing the disparate impact of pretextual stops, but we cannot find retroactive intention where there is none.  The Legislature utilized specific, conduct-based language that prevents the statute from reaching back to interactions occurring before its effective date.  By tethering the exclusionary remedy in CP § 1-211(c) to a violation of the standards set forth in the preceding subsections, the General Assembly established a clear temporal boundary.  Because the stops and searches of Cutchember and Hicks occurred in January 2023—before the statute was enacted and nearly six months before the

---

[9] Our decision today should not be construed as a per se rule that any and all statutory provisions containing the phrase "in violation of this section" must only operate prospectively.  Rather, we discern clear legislative intent of prospectivity here based on the structure of, and the relationship between, the "right" and "remedy" prongs of CP § 1-211(a) and (c).

statute's effective date—no violation of the statute could have occurred.  We cannot find a retroactive intent where the plain language of the statute, the presumption of prospectivity, and the supporting legislative documents all point toward a future-oriented application. Therefore, the circuit courts correctly determined that the evidence discovered during these stops remained admissible under the law as it existed at the time of the searches.

**IN CASE NO. 39, JUDGMENT OF THE APPELLATE COURT IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

**IN CASE NO. 40, JUDGMENT OF THE APPELLATE COURT IS AFFIRMED.  COSTS TO BE PAID BY PETITIONER.**